Argued February 10, reversed April 14, 1925.

## A. L. POWELL v. CITY OF PORTLAND.

(235 Pac. 274.)

**Municipal Corporations—Removed Employees' Complaint for Salary must Allege Demand on Commission for Investigation.**

1. In action by Portland civil service employees, employed under old charter of 1903, for salaries from date of their removal, in absence of allegation of demand on civil service commission for investigation as to "whether such removal was for political or religious reasons or was in good faith," as required by commission charter, Section 317, complaint fails to state cause of action.

**Municipal Corporation—Removed Employees' Complaint for Salary must Allege Service of Demand on Auditor.**

2. Complaint of Portland civil service employees in action for salaries from date of their removal *held* not to state cause of action, where it failed to allege service of demand on auditor, as

---

2. See 19 R. C. L. 1040.

required by legislative charter 1903, Section 278, and commission charter, Section 73.

**Municipal Corporations—Council may Abolish, Offices, Though Incumbents have Held Over from Former Charter.**

3.  Portland council may abolish subordinate offices, incumbents of which hold under provision of commission charter, Section 143, that incumbents of offices, under legislative charter of 1903, not expressly abolished, shall continue until their successors under this charter are chosen, since that section must be construed with Section 82, which gives council power by ordinance to abolish subordinate offices.

See (1) 28 Cyc., 604.  (2) 28 Cyc. 604.  (3) 28 Cyc. 401 (1926 Anno.).

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

REVERSED.

For appellant there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. H. M. Tomlinson,* Deputy City Attorney.

For respondent there was a brief over the names of *Mr. C. M. Idleman* and *Mr. M. W. Hearn,* with an oral argument by *Mr. Idleman.*

BURNETT, J.—From the complaint we learn that the plaintiff and his assignors, four in number, were employees of the defendant city while it was yet working under the last charter enacted for it by the legislative assembly of the State of Oregon approved January 23, 1903, and adopted by plebiscite of the people of Portland. It is averred that they were subject to the civil service rules in that charter and that on the adoption of what is known as the commission charter by vote of the people whereby the government of the city was vested in a board of Commissioners,

3.  See 19 R. C. L. 936; 22 R. C. L. 581.

"The incumbents of all offices, places and positions under the Charter of 1903, not expressly abolished by this Charter, shall continue to hold their respective places until their successors under this Charter are chosen and qualified."

The plaintiff draws the conclusion from this that the tenure of those employees was fixed by this enactment so that their positions became charter positions beyond the power of the city council to abolish. It further appears that on January 2, 1919, the commissioner of public works, being one of the members of the governmental commission, and head of the department in which the present claimants were employed, addressed to the plaintiff and to each of his assignors, under that date, the following letter:

"Dear Sir:

"On account of the lack of public improvements in the city at this time, it is necessary to reduce the force of inspectors. This condition has existed for some time as you know, but we have endeavored to keep you employed until the results of the examination for inspector of public works were received from the Civil Service Board. An eligible list has now been provided as a result of said examination from which it becomes necessary to make appointments for the few inspectors required for our work. I regret therefore to advise you that commencing with and including January 13th your services will not be required as inspector. Accordingly your appointment therefore as Inspector of Public Works on a temporary basis will close on January 12th.

"Yours truly,
"A. L. BARBUR,
"Commissioner of Public Works."

It is averred that, previous to the writing of this letter, the city council, composed of the mayor and commissioners, acting under the commission form

of government on March 13, 1918, enacted an
Ordinance No. 33906, entitled

"An Ordinance providing for the creation in the
department of public works of the position of in-
spector of public works and abolishing the position
of structural assistant, inspectors D–3 and inspectors
D–4, and declaring an emergency."

The plaintiff and his assignors had hitherto held
the positions of inspector of streets, sidewalks and
pipe sewers (D–3) and inspector of sewers other than
pipe sewers (D–4). The ordinance recites the dif-
ferent classifications of inspectors, that they preclude
to a great extent the shifting of them to such work
as may be available, and that it was for the best
interests of the city to provide for one classification
so they might be shifted to any work where their
services may be needed, irrespective of barriers of
classification. The ordinance then creates the posi-
tion of inspector of public works, imposing upon him
the duties hitherto performed by the structural
assistants, inspectors D–3 or inspectors D–4, which
last three positions are abolished by the ordinance.

The plaintiff contends that inasmuch as the posi-
tions held by him and his assignors as inspectors
D–3 and D–4 were charter positions, it was beyond
the power of the council to enact the ordinance
abolishing those positions and hence they are entitled
to recover from the city all the salaries accruing
since January 12, 1919, mentioned in the letter above
quoted, amounting in all to $11,951.

1. In order for the plaintiff to recover, he and his
assignors must be able to show that they are em-
ployees of the city and have been such continuously
since January 12, 1919, this irrespective of whether
the council had authority to abolish the position or

not.   At this point we refer to the legislative charter. In Section 317 thereof it is provided:

"No employee in the classified civil service who shall have been permanently appointed under the provisions of this article shall be removed or discharged except for cause, a written statement of which, in general terms, shall be served upon him and a duplicate filed with the Commission. Any employee so removed may within ten days from his removal file with the Commission a written demand for investigation. If such demand shall allege, or if it shall otherwise appear to the Commission that the discharge or removal was for political or religious reasons or was not in good faith, for the purpose of improving the public service, the matter shall forthwith be investigated by or before the Commission or by or before some officer or board appointed by the Commission for that purpose. The investigation shall be confined to the determination of the question of whether such removal or discharge was or was not for political or religious reasons, or was or was not made in good faith for the purpose of improving the public service. The burden of proof shall be upon the discharged employee. On such grounds the Commission may find that the employee so removed is entitled to reinstatement or may affirm his removal. The findings of such Commission or of such officer or board, when approved by the Commission, shall be certified to the appointing officer, and shall forthwith be enforced by such officer."

The meaning of this section is that the appointing power may remove the employee. If he desires to contest such removal he may file with the civil service commission a demand for investigation. The issue, then, is whether he was removed for religious or political reasons, or whether the removal was in good faith for improving the public service, and the

burden of proof is upon him.   In the absence of any question before the civil service board about the legality of his removal as provided by the excerpt from the charter just set out, manifestly the removal must stand and the plaintiff be deprived of his position.   The complaint does not state anything about any demand for investigation at the hands of the board or reinstatement by that body, consequently it fails to allege facts sufficient to show that the plaintiff and his assignors had any tenure to any position in the employ of the city after January 12, 1919. Hence the complaint is amenable to the general demurrer which the defendant filed urging that it did not state facts sufficient to constitute a cause of action.   This demurrer was overruled and upon that ruling of the court is predicated error of which the defendant city complained on this appeal.

2. It is further provided in the commission charter, Section 73, as well as in the legislative charter of 1903, Section 278:

"Every demand upon the Treasurer except the salary of the Auditor must before it can be paid be presented to the Auditor, who shall satisfy himself whether the money is legally due, and its payment authorized by law, and against what appropriation and out of what fund it is payable.   If he allows it he shall endorse upon it the word 'Allowed,' with the name of the fund out of which it is payable and the date of such allowance, and sign his name thereto, but if he disallows the same he shall endorse upon it the word 'Rejected.'   No demand shall be approved, allowed, audited or paid unless it specify each several item, date and amount composing it, and have endorsed thereon the legal authority for its payment."

Nothing is alleged in the complaint respecting a demand being served upon the auditor.   In this,

likewise, the complaint is subject to the general demurrer already mentioned.

3. Still further in the commission charter it is provided in Section 82, as follows:

"The Council shall have the power by ordinance to create and abolish all such subordinate offices, places and employments in the service of the city as it may deem necessary for efficient and economical administration. Each Commissioner shall appoint and remove the incumbents of all subordinate offices and employments in his department, subject to the Civil Service Rules of this Charter."

This is part of the enactment of the commission charter by vote of the people. The two excerpts must be construed together with the result that the incumbents of all offices, places and positions not expressly abolished by this charter shall continue to hold their respective places under the commission charter as provided in Section 143, subject nevertheless to the power of the council to abolish those offices. This is within the legislative discretion of the council and we may discern a good reason for its exercise by an examination of the civil service system as set out in Section 106 of the commission charter and Section 315 of the legislative charter as follows:

"No person shall be appointed or employed under any title not appropriate to the duties to be performed, and no person shall, without examination, be transferred to or assigned to perform the duties of any position in the classified civil service unless he shall have been appointed to the position from which such transfer is made as the result of an open competitive examination equivalent to that required for the position to which the transfer is made, or unless he shall have served with fidelity for at least six years in a like position in the service of the city."

Under the classifications of structural assistant and inspectors D-3 and inspectors D-4, it would be incompatible with the civil service rule to transfer these men from one employment to another without the devious method of an additional examination. The object of the ordinance abolishing these positions was to consolidate them under one head and within the legislative discretion of the council it constituted a good reason for abolishing the original positions. The people of Portland under their inherent power to alter, reform or abolish their government in such manner as they may think proper, conferred upon them by the initiative and referendum amendments to the state Constitution, had a right to change to the commission form of government and confer upon that government the power to abolish subordinate positions and employments as described in Section 82 of the commission charter.

The plaintiff and his assignors are not immune from discharge under the old charter nor abolition of their position under the new charter. By their complaint they show that they have not rendered any services to the city since January 12, 1919. They cannot reap where they have not sown, and hence are not entitled to recover anything from the city since that date. The Circuit Court was wrong in refusing to sustain the demurrer to the complaint and in awarding judgment in favor of the plaintiff. The judgment is reversed.                REVERSED.